1
2
3
4

**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250

5
6
7

BRADLEY H. SCHLEIER, ESQ. #011696
Brad@schleierlaw.com
TOD F. SCHLEIER, ESQ. #004612
Tod@schleierlaw.com

8

*Attorneys for Plaintiff Sean Leslie Cooper*

9

IN THE UNITED STATES DISTRICT COURT

10

DISTRICT OF ARIZONA

| | |
|---|---|
| 11  Sean Leslie Cooper, a married man, ) | No. |
| 12           Plaintiff, ) | |
| 13  v. ) | **COMPLAINT** |
| 14  American Express Travel Related ) | **(JURY TRIAL DEMANDED)** |
| 15  Services Company, Inc., a foreign ) | |
|     corporation; Malcolm Browne, Jr., ) | |
|     a married man; ) | |
| 16           Defendants. ) | |
| 17 ) | |

18   Plaintiff Sean Leslie Cooper by and through counsel, for his Complaint against

19   Defendants American Express Travel Related Services Company, Inc. and Malcolm Browne,

20   Jr. alleges as follows.

21                    **JURISDICTION AND VENUE**

22   1.   This is an action against Defendant American Express Travel Related

23   Services Company, Inc (hereinafter "AmEx") and Defendant Malcom Browne, Jr.

24   (hereinafter "Defendant Browne") to remedy employment practices in violation of  the

25   Family Medical Leave Act, ("FMLA"), 29 U.S.C. §2611, *et. seq.,* and Americans With

26   Disabilities Act   of 1990, 42 U.S.C. §§12101, *et seq.,* including the Amendments

contained in the ADA Amendments Act of 2008 (hereinafter collectively "ADA"), and to correct unlawful employment practices on the basis of disability to vindicate Plaintiff's rights, and to make him whole.

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 29 U.S.C. §2611 *et seq*. as this matter involves a federal question under the FMLA and ADA.

3.     The unlawful employment practices described herein were committed within Maricopa County, State of Arizona.  Accordingly, venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

## PARTIES

4.     Plaintiff Sean Leslie Cooper (hereinafter "Plaintiff" or "Cooper") is a married man and at all times relevant herein resided in Phoenix, Maricopa County, State of Arizona.  Plaintiff suffers from a disability as defined by the ADA.

5.     Defendant AmEx is a foreign corporation doing business in the State of Arizona and is an employer subject to the FMLA and ADA.

6.     Defendant Browne is a married man who resides in Maricopa County, State of Arizona. All actions with regard to Plaintiff were done on his own behalf and on behalf of his marital community and within the course and scope of his employment with and in his official capacity as an employee of Defendant AmEx.

## PROCEDURAL REQUIREMENTS

7.     On September 18, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission claiming disability discrimination and retaliation.  On or about May 22, 2020, the Equal Employment Opportunity Commission issued a Notice of Right to Sue.  This action has been filed within ninety (90) days after Plaintiff received his Notice of Right to Sue and Plaintiff has therefore satisfied all procedural requirements necessary to bring this action.

# BACKGROUND

8.     Defendant AmEx hired Plaintiff in May 2011 as an individual contributor in corporate sales.

9.     Throughout his career with AmEx, Plaintiff was a high performer receiving regular raises and promotions.

10.     Plaintiff was promoted to the leader of a new digital sales pilot program in August 2016. Plaintiff was assigned six direct reports for marketing and two direct reports to handle referral card sales.   During the next 18 months, Plaintiff's direct reports increased from 8 to 13, with responsibility for over $1 billion in revenue volume.

11.     Plaintiff was selected as Sales Leader of the Year for 2017.

12.     In the fall of 2017, Plaintiff and his direct report teams were placed under the supervision of Defendant Malcolm Browne, Jr. Defendant Browne relocated from Florida to Arizona in January 2018, at which time Plaintiff and Defendant Browne began to have weekly meetings.

13.     In May 2018, three of Plaintiff's direct reports workload increased, and due to a change in the bonus structure, decreased the sales bonus potential for each of the three individuals by sixty (60%) percent. The decisions and change in compensation were outside of Plaintiff's control. Naturally, all three of the direct reports were upset at increased workload and less bonus potential.

14.     Plaintiff heard the complaints of his three direct reports but was unable to make any changes. The same three individuals met with Defendant Browne about the issues. Defendant Browne informed Plaintiff of his frustration with the three individuals and remarked that if they were unhappy with their compensation plan, they were free to find new jobs.

15.     Plaintiff then met with each of the three individuals separately, as suggested by Defendant Browne, and by the end of May 2018, the issues had been resolved.  Just one of the direct reports transferred to another department in November 2018.

16.     Though Plaintiff may have handled the matter differently, he followed the direction of Defendant Browne with regard to how he handled the matter.

17.     On July 8, 2018, Plaintiff was involved in a serious head-on car accident. Plaintiff was diagnosed with a herniated disc in his back and a severe concussion. Although instructed to take three weeks off to heal, Plaintiff took off only one week. Although Plaintiff was not physically at work during this 1-week period, he was in contact with his direct reports and submitted nightly performance reports to Defendant Browne.

18.     Plaintiff's injuries required extensive medical care for his injuries, including physical therapy and vestibular therapy, 4-5 times each week. Plaintiff attempted to schedule such therapy either early in the morning or late in the afternoon to minimize any disruption in his duties and responsibilities.

19.     At all times, Plaintiff kept his supervisor, Defendant Browne, apprised of his injuries and medical care.

20.     In August 2018, a multi-day meeting for all leaders was scheduled to take place in New York in September. Plaintiff had not been medically cleared yet for air travel and when he informed Defendant Browne of this fact, Defendant Browne rolled his eyes and stated Plaintiff needed to attend the meeting.

21.     Plaintiff made arrangements for he  and his wife to fly to New York two days in advance of the meetings so that he could travel one day and rest the next before the multi-day meetings began in order to alleviate any concussive or back symptoms he may encounter due to traveling. Plaintiff also made arrangements for his mother to fly to Phoenix so that she could care for his young children and allow his wife to accompany and assist him with the travel.

- 4 -

22.     In September, Plaintiff flew to New York.  During the three-day, four-night meeting, he engaged in meetings. Approximately 70 American Express employees attended this event. Plaintiff participated in and contributed to a presentation during the multi-day meetings.

23.     Upon arriving back in Phoenix from the meeting, Defendant Browne expressed to Plaintiff that he was well respected by his peers and had demonstrated great leadership during the meetings. Defendant Browne began to talk about Plaintiff's next promotion.

24.     In November 2018, Defendant Browne requested that Plaintiff create a Standard Operating Procedure Manual regarding employee expectations and discipline. This was in anticipation of Plaintiff's next promotion.

25.     Also in November 2018, Defendant Browne informed Plaintiff that his team was first in the sales division for revenue proceeding and that out of the four leaders in the group, Plaintiff would be receiving the highest rating for 2018. Defendant Browne stated Plaintiff could expect a significant salary raise in 2019.

26.     In late November 2018, Plaintiff was informed by his physician that the disabling back injuries/condition he sustained in the car accident would require surgery. On December 6, 2018, Plaintiff informed Defendant Browne that he would be scheduled for back surgery to take place on December 20 and that he would require time off under FMLA for the surgery and recuperation.

27.     Plaintiff wanted his supervisor to know he would be out of the office and would be submitting the necessary paperwork. Defendant Browne stopped discussing Plaintiff's next promotion, immediately pulled up the hours for Plaintiff's vacation and paid time off and said if Plaintiff needed FMLA "I guess use it."

28.     The next day, December 7, 2018, Defendant Browne asked Plaintiff to come to a small conference room. A representative from Human Resources joined them and Plaintiff was terminated.

29.     The reasons provided for his termination were false and merely a pretext to the real reason for his termination. Moreover, the reasons provided for his termination were directly attributable to Defendant Browne.

30.     Prior to his termination, Plaintiff had not been provided any notice of any deficiencies in his performance.  In fact, he had been told that he would be receiving a raise, bonus and a promotion in the weeks leading up to his termination.

## COUNT ONE

## VIOLATION OF THE ADA

## (AGAINST DEFENDANT AMEX)

31.     By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

32.     At all times relevant hereto, Defendant AmEx has been subject to the requirements of the ADA.

33.     At all times relevant hereto, Plaintiff was an individual with a disability as defined under the ADA inasmuch as he has a back disability  as defined by the statute or was regarded as a person with an impairment as defined by the Act.

34.     From July 2018 through his termination (and to the present), Plaintiff was an employee with a disability as defined under the ADA and performed all his duties and responsibilities without the need for an approved accommodation until such time as back surgery would be scheduled in December 2018.

35.     Within one day of Plaintiff notifying Defendant Browne, his supervisor, of the need for time off due to back surgery, Plaintiff was terminated.

- 6 -

36.     Plaintiff was discriminated against and terminated due to his disability and accommodation for time off.  Defendant AmEx's actions constitute a  violation of the ADA, 42 U.S.C. §12112, which prohibits discrimination on the basis of disability.

37.     As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has sustained economic damages in the form of loss of wages and the value of job benefits in an amount to be proven at trial.

38.     In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, damage to his reputation due to the termination, and other non-pecuniary losses all in an amount to be proven at trial.

39.      The actions of Defendant AmEx were done in reckless indifference to Plaintiff's federally protected rights thereby entitling Plaintiff to an award of punitive and or exemplary damages.

## COUNT TWO

## VIOLATION OF THE FMLA

## (AGAINST DEFENDANT AMEX AND BROWNE)

40.     By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

41.     Both Defendant AmEx  and Defendant Browne are employers as defined by the FMLA. 29 U.S.C. §2611(4)(A) are obligated to conform with the FMLA as it relates to need for protected leave with regard to Plaintiff's back surgery and necessary recuperation period.

42.     Plaintiff was a covered employee under the FMLA.

43.     Plaintiff was required to take protected FMLA qualifying leave due to his serious back injury, upcoming surgery, and recuperation pursuant to his rights under the FMLA.

44.     The FMLA guarantees that an employee seeking to or taking protected leave will not result in the loss of job security or other adverse employment actions.

45.     The FMLA provides job security and leave entitlements for employees who need to take absences from work for personal medical reasons.

46.     Defendants interfered with Plaintiff's protected rights under the FMLA when Plaintiff was terminated just one day after notifying Defendant Browne of the impending FMLA leave.

47.     Defendants' actions violated the FMLA as his termination was causally related to   Plaintiff's notification of anticipated FMLA qualified leave due to his impending back surgery.

48.     Plaintiff's request for protected FMLA was a negative factor in the decision to terminate Plaintiff's employment.

49.     As a direct and proximate result of Defendants' interference, Plaintiff has suffered and continues to suffer economic damage in the form of lost wages and the value of job benefits.

50.     Defendants acted willfully in their violation of the FMLA in retaliating against Plaintiff thereby entitling him to a doubling of the damages set forth above as liquidated damages as authorized by 29 U.S.C. §2617(a)(1).

51.     Plaintiff is entitled to an award of attorneys' fees incurred in pursuing his claims under the FMLA.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally as follows:

1.     For General and Special damages to be proven at trial;

2.     For compensatory damages relating to emotional distress as proven at trial (against AmEx only);

- 8 -

3.      For punitive and exemplary damages to be proven at trial (against AmEx only);

4.      For liquidated damages;

5.      For reasonable attorneys' fees and costs; and

6.      For such other relief, the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 17th day of August 2020.

**SCHLEIER LAW OFFICES, P.C.**

/s/ Bradley H. Schleier
Bradley H. Schleier
3101 North Central Ave., Suite 1090
Phoenix, Arizona 85012
Brad@SchleierLaw.com
*Attorneys for Plaintiff Sean Leslie Cooper*